UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| RODARIUS GREEN a/k/a ROD WAVE, | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) |
| VARIOUS JOHN DOES, JANE DOES and ABC COMPANIES | ) |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCITON AND ORDER OF SEIZURE**

I. **INTRODUCTION**

This is a case of unfair competition and trademark infringement against parties who are selling unlicensed and infringing merchandise bearing the trademark, likeness and logos of the musical performer known as Rod Wave.

Plaintiff requests entry of an *ex parte* temporary restraining order as well as an order directing seizure of the infringing merchandise. Such relief finds authority in the law and has been granted by courts around the United States.

These orders are not requested lightly. Without entry of these orders, neither this Court nor Plaintiff will be able to prevent the sale of the infringing merchandise. Experience in other cases has shown that unless such orders are issued *ex parte*, Defendants will simply sell their

infringing merchandise. Hence, a temporary restraining order and order of seizure is needed now, *ex parte*.

II. **STATEMENT OF FACTS**

Rod Wave is a world-famous musical performer who is on a nationwide tour. He is scheduled to appear at the Spectrum Center in Charlotte, North Carolina on November 15, 2023. The tour involves many arenas with seating in excess of 15,000 people, and we expect that a total of 500,000 Rod Wave fans will attend his concerts.

Inside the concert halls across the country, Plaintiff expects to sell substantial quantities of merchandise, such as t-shirts, bearing the Rod Wave trademark, likeness and/or logos. These sales will produce income for the concessionaires, performing artists and the concert facility together with taxes for local cities and towns, state governments and the federal government.

This action has been instituted to remedy what is tantamount to the theft of a substantial portion of Plaintiff's income by the sale of unlicensed merchandise by "bootleggers". Bootleggers have made it a practice of following nationally popular performers across the country on their concert tours to sell infringing merchandise in the vicinity of the performers' concerts.

They sell unauthorized merchandise bearing the names, logos, likenesses, trademarks and artwork of musical performers without their permission and without payment of royalties to them. The bootleggers' sale of that merchandise causes confusion in the minds of the consuming public as to who produces that merchandise.

As a result of the aforesaid bootlegging activities, substantial income is diverted from concert performers, legitimate concessionaires and performing artists. The names and reputations of the legitimate concessionaires and musical performers are traded upon and

frequently injured by the bootleggers' inferior merchandise. To combat this problem, musical performers and/or legitimate concessionaires, have undertaken a national program to halt the bootleggers' illegal activities. This action is part of that program.

The Court is respectfully referred to the Declarations of Kenneth A. Feinswog and Lorenzo Biddines that are submitted herewith as Exhibits A and B, respectively. Mr. Feinswog's declaration outlines the history of bootlegging and the problems that musical performers have had dealing with bootleggers.

Mr. Biddines is supervising the sale of Rod Wave merchandise on this tour. In his declaration, Mr. Biddines relates his experience in dealing with bootleggers to exhibit that the only effective relief that Plaintiff can obtain against the bootleggers is nationwide seizure relief.

### III. LEGAL ARGUMENT

#### A. TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ARE MANDATED HERE AS PLAINTIFF MEETS ALL TESTS FOR SUCH EQUITABLE RELIEF.

It is well established in law that a Plaintiffs may obtain a temporary restraining order and preliminary injunction against trademark infringement and unfair competition. *Ross-Whitney Corporation v. Smith-Kline & French Laboratories*, 207 F.2d 190 (9th Cir. 1953).

The standard for granting a preliminary injunction is well settled in this Circuit. In order to obtain a preliminary injunction, it must be demonstrated that: (1) plaintiff is likely to succeed on the merits; (2) plaintiff is likely to suffer irreparable injury in the absence of preliminary relief; (3) the balance of the equities tips in plaintiff's favor; and (4) an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7 (2008).

The most recent Supreme Court test was adopted by the Fourth Circuit in *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on*

3

*other grounds*, 130 S.Ct. 2371, (2010) (memorandum opinion), *reissued in pertinent part*, 607 F.3d 355 (4th Cir. 2010), *overruling Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189 (4th Cir. 1977).

Plaintiff meets all the criteria of the aforesaid tests because of Defendants' flagrant activities in selling goods bearing identical copies of the Rod Wave trademark, logos and likenesses.

1. **PLAINTIFFS WILL PREVAIL ON THE MERITS.**

Section 43(a) of the Lanham Act (15 U.S.C. §1125(a)), entitled "False Designations of Origin and False Descriptions Forbidden" provides:

> (a)     Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ---
> (1)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person...shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The stated intent of the act is to protect persons engaged in ". . . commerce against unfair competition," and "to prevent fraud and deception in such commerce." (15 U.S.C. §1127). Although §43(a) caused some judicial confusion in its early years, the courts are now in agreement that Congress, in enacting this section, created a new federal statutory tort which is remedial and should be broadly construed. *CBS, Inc. v. Springboard Int'l Records*, 429 F.Supp. 563, 566 (S.D.N.Y. 1976).

The elements of a cause of action under Section 43(a) are: (1) the involvement of either goods or services; (2) activity which affects interstate commerce; and (3) a "false designation of

origin, or any false description or representation . . . relating to the product." *CBS, Inc., supra* at 566.

The Court in *New West Corp. v. NYM Co. of California, Inc.*, 595 F.2d 1194 (9th Cir., 1979), summarized the settled law in relation to actions prohibited by §43(a) as follows:

> To recover for a violation of this act, it is not necessary that a mark or trademark be registered. The dispositive question is whether the party has a reasonable` interest to be protected against false advertising . . ." Trademark infringement or unfair competition preclude one from using another's distinctive mark or name if it will cause the likelihood of confusion or deception as to the origin of the goods. Similarly, under the Lanham Act (43(a)), the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks . . .

As demonstrated in the declarations filed herewith, Defendants will appropriate the Rod Wave trademark, likeness and logos and use them in their sale of bootleg merchandise throughout the United States. That misappropriation will create the impression that the bootleg merchandise is in some manner connected with or originates from the owners of those marks and creates the likelihood of deception as to the origin of these products. *Apollo Distributing Co. v. Apollo Imports, Inc.*, 341 F. Supp. 445, 458 (S.D.N.Y. 1972). Defendants' actions are undeniably in violation of the Lanham Act.

There is no need to show that any false descriptions or representations are willful or intentional. *Parkway Bacon Company v. Freihofer Bacon Company*, 255 F.2d 641, 648 (3d Cir. 1968). All that is required is that the representations or descriptions either be false or tending to falsely describe or represent the goods or services in question. Thus, liability is not restricted solely to descriptions that are literally false, but it extends to instances where the defendant creates a false impression. *U-Haul International, Inc. v. Jartran, Inc.*, 681 F.2d 1159 (9th Cir. 1982).

The primary issue that Plaintiff must prove in order to prevail at trial is that there is a likelihood of confusion, mistake, or deception in Defendants' use of the trademarks and trade name. *New West Corp. v. NYM Co. of California, Inc., supra*. at 1202 ("ultimate test is whether the public is likely to be confused or deceived by the similarity of the marks"). All that is required is "likelihood of confusion". It is not necessary to prove that any person has been actually mistaken, confused or deceived; it is sufficient that there is likelihood of confusion, mistake or deception. *Bank America Corp. v. Bamieh*, 188 U.S.P.Q. 380, 382 (N.D. Cal. 1975).

The cases which have dealt with the situation where a defendant has been so bold as to sell counterfeit products with copies of a plaintiff's trademarks have made it clear the plaintiff will prevail on the merits. In *re Vuitton et Fils S.A.*, 606 F.2d 1, 4 (2d Cir. 1979), the Court of Appeals of the Second Circuit mandated a district court to enter an *ex parte* temporary restraining order without notice to counterfeiters of the plaintiff's products. The Court noted that:

> . . . the likelihood of product confusion exists. The allegedly counterfeit Vuitton merchandise is virtually identical to the genuine items. Indeed, the very purpose of the individuals marketing the cheaper items is to confuse the public into believing that it is buying the true article.

Plaintiff has established that much more than the possibility that Plaintiff may prevail on his trademark infringement and unfair competition case with Defendants selling Rod Wave merchandise to Rod Wave fans outside Rod Wave concerts. In view of the foregoing, an immediate temporary restraining order and preliminary injunction is necessary to prevent irreparable harm and injury to Plaintiff.

## 2. UNLESS DEFENDANTS ARE ENJOINED. PLAINTIFF WILL HAVE NO ADEQUATE REMEDY OF LAW AND WILL BE IRREPARABLY INJURED.

One of the realities of trademark infringement is that money damages for lost reputation are rarely adequate. Resting in equity, trademark damages are exceedingly difficult to measure in terms of dollars. *Omega Importing Corp. v. Petri-Kline Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

Plaintiff submits that the harm he may suffer here from Defendants' use of the Rod Wave mark is immeasurable since customers have bought and will continue to buy Defendants' goods thinking that they are goods produced and/or authorized by Plaintiff.

The damage caused by confusion to the public is incapable of precise financial measurement given the intangible nature of an asset such as goodwill. *Communication Satellite Corporation v. Comset, Inc.*, 429 F.2d 1245, 1253 (4th Cir. 1971).

A trade name or trademark is a badge. It represents to the world the identity of the source of the goods that bear it. The reputation of Plaintiff rests with his trademark. Where Defendants use the Rod Wave mark, customers will associate Defendants' goods with him. Rod Wave is entitled to his own reputation and not that of others. As Judge Learned Hand aptly noted in *Yale Electronic Corp. v. Robertson*, 26 F.2d 972, 974 (2d Cir. 1928), with respect to a trademark owner:

> his mark is his authentic seal; by it he vouches for goods which bear it; it carries his name for good or ill. If another uses it, he borrows the owner's reputation, whose quality no longer lies within his own control. This is an injury, even though the borrower does not tarnish it, or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only as a mask.

Thus, if Defendants are permitted to use the Rod Wave mark, then Defendants will be permitted to trade upon and tarnish Plaintiff's valuable reputation.

### 3. THE BALANCE OF IRREPARABLE HARM FAVORS PLAINTIFF.

The irreparable injury to Plaintiff, and the public, weighs strongly in favor of granting the requested relief. The inconvenience to Defendants, if the preliminary injunction issues, is merely economic, consisting of lost sales of unauthorized, unlicensed and infringing products. Defendants have no legitimate interest in retaining unauthorized, unlicensed and infringing goods.

Given "the probable outcome of this action, this is a loss which [Defendants] may justifiable be called upon to bear." *Corning Glass Works v. Jeanette Glass Co.*, 308 F.Supp. 1321, 1328 (S.D.N.Y. 1970), *aff'd* 432 F.2d 784 (2d Cir. 1970). In weighing Defendants' possible economic loss against Plaintiff's already occurring loss to sales, and his goodwill and reputation built up through years of selling high quality products, as well as the long-term disastrous effects of unfettered counterfeiting on his business, the balance falls heavily in Plaintiff's favor.

### 4. THE ISSUANCE OF AN INJUNCTION IS NECESSARY TO PROTECT THE PUBLIC INTEREST.

Finally, whatever Plaintiff's rights might be, the right of the public to be free from the deception and misbranding which results from unfair competition by another's use of a trademark are transcendent and aptly may be considered in such a case. As the court noted in *Stahly, Inc. v. M.H. Jacobs Co.*, 183 F.2d 914, 917 (2d Cir. 1950):

> It must be remembered that the trademark laws and the law of unfair competition are concerned also with the protection of the public from fraud and deceit . . . and it is obvious that the right of the public to be so protected is a right which transcends the rights

of the individual trademark owner and is beyond his power to waive.

This is a case where Defendants' use of the Rod Wave trademark is deceiving the public in order to trade upon Plaintiff's reputation by selling merchandise to unsuspecting people.

In *Playboy Enterprises, Inc. v. Baccarat Clothing Co., Inc.*, 692 F.2d 1272 (9th Cir. 1982), the Ninth Circuit Court of Appeals emphasized the necessity for stringent remedies against those who seek to counterfeit trademarks and labels in order to trade upon another's goodwill. The Court noted:

> In addition to the harm caused the trademark owner, the consuming public is equally injured by an inadequate judicial response to trademark infringement. Many consumers are willing to pay substantial premiums for particular items which bear famous trademarks based on their belief that such items are of the same high quality as is traditionally associated with the trademark owner. As a result of this trademark infringement, the consuming public is denied the benefit of their bargains and the reputation and goodwill of the trademark owner is accordingly harmed. For these reasons, it is essential that the trial courts carefully fashion remedies which will take all the economic incentive out of trademark infringement.

Accordingly, the public will be irreparably injured by Defendants' use of the Rod Wave trademark.

### 5. THIS COURT HAS THE AUTHORITY TO ISSUE AN EX PARTE TEMPORARY RESTRAINING ORDER AND SEIZURE ORDER.

Once a violation of the Lanham Act is demonstrated, injunctive relief will readily issue pursuant to Sec. 34 (15 U.S.C. §1116) thereof. *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1013 (5th Cir. 1975), cert. denied, 423 U.S. 868, reh. denied, 423 U.S. 991 (1975). Sec. 34 (15 U.S.C. §1116) of the Lanham Act gives the court the power to grant injunctions … "to prevent the violation of right" of the owner of a mark or to

prevent a violation of Section 1125(a). Clearly, the Lanham Act grants ex parte seizure to this Court. The critical operative word is "prevent" which, in the instant case, is impossible without nationwide seizure.

As to enforcement remedies, seizure is specifically singled out and mandated in 15 U.S.C. 1118 which provides that:

> In any action under this Act, in which a violation of any right of the registrant of a mark . . . or a violation under Section 1125(a) of this title shall have been established the court may order that all labels, signs, prints, packages, wrappers, receptacles and advertisements in the possession of the defendant, bearing the mark or any reproduction, counterfeit, copy or colorable imitation thereof, and all plates, molds, matrices and other means of making the same, shall be delivered up and destroyed.

The foregoing sections grant this Court the right to fashion a nationwide order to seize and deliver for destruction infringing goods.

Perceiving both the unfortunate reality of this situation, the covert nature of bootleggers' activities, and the vital need to establish an economic disincentive for trademark counterfeiting, trademark owners sought, and district courts now grant, what are generally referred to as national seizure orders. Such Orders empower the United States Marshals, or other law enforcement authorities to seize infringing merchandise within a three to twenty-five-mile radius of concert performances of the musical group that is the subject of said action. Copies of many of those orders are annexed to the Declaration of Kenneth A. Feinswog submitted herewith.

It is essential to note that in most instances the nationwide service orders granted by the various courts have (a) gone unreported and, more to the point (b) have rarely if ever been challenged since the defendants are loath to appear. In one of the few decisions where a nationwide seizure order was contested by a defendant, in the action entitled *Great Southern Co.,*

*Inc. et al v. John Doe et al* 82 Civ. 294, N.D. Ohio, April 30, 1984, the Honorable Nicholas J. Walinski upheld a nationwide seizure order and stated:

> The Court first notes its authority to grant injunctions of a nationwide scope. Section 34 of the Lanham Act 15 U.S.C. 1116 gives 'any district court of the United States' the power to grant injunctions which 'may be served on the parties . . . anywhere in the United States where they may be found, and shall be operative and may be enforced by the Court by which such injunction was granted, or by any other U.S. District Court in whose jurisdiction the defendant may be found.' Particularly in circumstances where the Plaintiff's market area is nationwide, the Plaintiff must be entitled to nationwide protection. See, e.g. *Golden Door, Inc. v. Odisho*, 437 F. Supp 956 (N.D. Cal. 1977); *Five Platters, Inc. v. Purdie*, 419 F.Supp. 372 (D. Md. 1976). Because Plaintiffs in this case are a musical group presently engaged in a tour throughout the U.S., this Court's issuance of a nationwide injunction was necessary and rightful. (A copy of that decision is annexed to the Declaration of Kenneth A. Feinswog as Exhibit C).

The Court, through its grant of equity power, has the authority to issue such relief as merits the necessities of each particular case. *Hecht Company v. Bowles*, 321 U.S. 321 (1944). An equitable remedy is a blend of what is necessary, what is fair and what is workable. The court must look to the practical realities and necessities involved in reconciling competing interests. *Lemon v. Kurtzman*, 411 U.S. 192, 200-201 (1973). The practical reality of the present set of circumstances is that Plaintiff has no other recourse and has no means of preventing his loss without nationwide seizure relief. Without the remedy of nationwide seizure, this lawsuit will be an exercise in futility.

IV. **CONCLUSION**

Defendants' unauthorized use of the Rod Wave trademark infringes upon Plaintiff's rights. Given Defendants' reckless disregard of Plaintiff's rights, nothing short of nationwide injunctive restraint and seizure will prevent Defendants from infringing on the Rod Wave mark

in the future. As noted above, under these circumstances, the Courts have not hesitated to direct nationwide seizure of all infringing merchandise.

For the reasons set forth above and in the Motion, Complaint and declarations submitted herewith, Plaintiff respectfully requests that the Court grant his motion for a Temporary Restraining Order, Preliminary Injunction and Order of Seizure.


Dated: November 9, 2023　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　RODARIUS GREEN a/k/a ROD WAVE


　　　　　　　　　　　　　　　　　　　By his attorney,

　　　　　　　　　　　　　　　　　　　*/s/ Richard M. McDermott*
　　　　　　　　　　　　　　　　　　　Richard M. McDermott
　　　　　　　　　　　　　　　　　　　McDermott IP Law
　　　　　　　　　　　　　　　　　　　Lofts at Historic Atherton Mill
　　　　　　　　　　　　　　　　　　　2108 South Boulevard
　　　　　　　　　　　　　　　　　　　Suite 104
　　　　　　　　　　　　　　　　　　　Charlotte, NC 28203
　　　　　　　　　　　　　　　　　　　704-451-2126
　　　　　　　　　　　　　　　　　　　rick@mcdermottiplaw.com
　　　　　　　　　　　　　　　　　　　www.mcdermottiplaw.com