**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:23-CV-00753-KDB-DCK**

|  |  |
|---|---|
| **RODARIUS GREEN,** | |
| **Plaintiff,** | |
| **v.** | <u>**ORDER**</u> |
| **ABC COMPANIES AND JOHN & JANE DOES,** | |
| **Defendants.** | |

**THIS MATTER** is before the Court on Plaintiff Rodarius Green's (A.K.A. "Rod Wave") Motion for an *ex parte* Order of Seizure and Temporary Restraining Order ("Motion") (Doc. No. 3). In his Motion, Mr. Green requests a nationwide order permitting the seizure and impoundment of all merchandise infringing on his trademarks sold in and around his concerts and further seeks an emergency injunction barring the bootleggers from selling unauthorized merchandise. The Court has carefully considered this Motion, Plaintiff's brief, exhibits, and oral argument from Plaintiff's counsel on November 14, 2023. For the reasons discussed below, the Court will **GRANT** the motion in the manner described below.

## I.       DISCUSSION

Mr. Green is a musical performer currently performing on a nationwide tour. He sells shirts and other merchandise bearing his trademark, likeness and/or logo at his concert venues and plans to sell those goods during a concert in Charlotte, North Carolina on November 15, 2023. But, according to Plaintiff, he and his authorized distributors will not be the only ones selling "Rod Wave" merchandise. Plaintiff alleges based on prior concerts that bootleggers will

locate themselves in close proximity to his shows to sell unauthorized "Rod Wave" merchandise that infringes on his trademarks. However, Plaintiff does not know the names of those bootleggers, doubts any will identify themselves at the concerts, and has not seen a bootlegger show up in court if identified and sued. So, Plaintiff filed the present lawsuit asking this Court for an emergency product seizure order and temporary injunction barring the bootleggers—known only as John Does—from selling unauthorized merchandise during Rod Wave's concerts in Charlotte and future stops on his tour.

### A.    <u>Seizure Order</u>

Congress addressed the unknown-infringer predicament in 1984 when it amended the Lanham Act to authorize *ex parte* injunctive lawsuits similar to those that courts had permitted under their inherent equitable authority and Federal Rule of Civil Procedure 65. *See, e.g.,* Rakoff & Wolff, *Commercial Counterfeiting and the Proposed Trademark Counterfeiting Act,* 20 Am. Crim. L. Rev. 145, 209–224 (1982). Specifically, under 15 U.S.C. § 1116(d), a court may issue an *ex parte* order to seize goods, records, counterfeit marks, and the means of making such marks. The marks must be connected to a sale, offer to sell, or distribution of goods or services that, under § 1114(1)(a), infringe because they bear a "reproduction, counterfeit, copy, or colorable imitation of a registered mark," are "likely to cause confusion, or to cause mistake, or to deceive," and lack "the consent of the registrant." 15 U.S.C. § 1114(1)(a). Section 1116(d)(B)(i) authorizes the Court to order seizure to protect "a mark that is registered on the principal register in the United States Patent and Trademark Office…"

Here, however, counsel stated that Mr. Green's trademark is not registered and further that Plaintiff had not given notice to the U.S. Attorney for the Western District of North Carolina as required by the statute. *See* § 1116(d)(2).   Accordingly, seizure under Section 1116 is not

directly authorized under the plain terms of the statute. *See General Elec. Co v. Speicher*, 877 F.2d 531 (7th Cir. 1989 ("It is also true that the seizure statute does not apply to unregistered marks as such…"). However, at oral argument, Plaintiff's counsel asked the Court to nevertheless enter the requested seizure order under both the broader provisions of the Lanham Act and the inherent equitable power of the Court. As discussed below, the Court will enter a limited seizure order with appropriate procedural safeguards to protect Mr. Green's demonstrated intellectual property interests which are at immediate risk.

Under 15 U.S.C. § 1125(c)(5), "the owner of a famous mark shall be entitled to injunctive relief as set forth in [S]ection 1116 of this title." Section 1125(c)(2) defines a famous mark as one that "is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." Whether the mark is registered is a factor the Court may consider, but it is not dispositive. *See* § 1125(c)(2)(A)(i)-(iv).

Mr. Green's counsel has testified that he is "world-famous" and that his national tour is expected to draw hundreds of thousands of fans across the country. (Doc. No. 4, at 2). Indeed, three of his albums have reached Number 1 on the Billboard Album Chart. (Doc. No. 4-2, at 2). In 2021, Mr. Green won the Billboard Music Award for Top New Artist. *Id.* Furthermore, he has sold more than 10 million copies of record music, and, relevant to this case, he has sold more than $2 million worth of licensed merchandise bearing his trade name. *Id.* Moreover, the fact that bootleggers sell merchandise using Mr. Green's trade name is evidence that "Rod Wave" is a "famous mark" for purposes of § 1125(c)(5). In short, the Court finds that it is likely that the name "Rod Wave" is a famous mark subject to protection under § 1125(c) and therefore § 1116.

However, even if Section 1125 of the Lanham Act did not authorize a seizure of goods that infringe Mr. Green's unregistered trademark, the Court has authority under the All Writs

Act, which authorizes courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principals of law," and Federal Rule of Procedure 65 ("Rule 65"), which authorizes a court to issue a preliminary injunction or temporary restraining order. 28 U.S.C. § 1651(a); Fed. R. Civ. Pro. 65. Moreover, it has long been a fundamental principle of our law that "[i]t is a settled and invariable principle, that every right, when withheld, must have a remedy, and every injury its proper redress." *Marbury v. Madison*, 5 U.S. 137, 147, 2 L. Ed. 60 (1803). Congress has granted unregistered trademark holders a legal right by expressly extending trademark protections to the owners of unregistered trademarks. *See generally* 15 U.S.C. § 1125. Therefore, whether or not § 1116(d) authorizes relief for holders of unregistered trademarks, the Court is authorized to issue a seizure order in this case under the All Writs Act.

Importantly, the Court's order of seizure, which mirrors § 1116, will also provide significant procedural safeguards for potential defendants. For example, it offers the opportunity for a prompt hearing in which defendants can contest the seizure of their goods and mandates that Mr. Green provide a security in the event defendants are damaged by a wrongful seizure. §§ 1116(d)(4)(A), (d)(10)(A). Therefore, the Court is persuaded in light of the immediacy of the circumstances, alleged harm, and the procedural safeguards for potential defendants who may be subject to a wrongful seizure that it should grant Mr. Green's request for a seizure order for merchandise bearing the full name "Rod Wave," which counsel stated was the trademark which would distinguish infringing goods.

### B. Temporary Restraining Order

Mr. Green also has asked the Court for an *ex parte* temporary restraining order, to lay the foundation for a preliminary injunction, that reaches beyond Charlotte and the Western District

4

of North Carolina to cover his future tour stops. Temporary Restraining Orders ("TRO") and Preliminary Injunctions are governed by Rule 65 of the Federal Rules of Civil Procedure, which provides that a TRO may be issued only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The movant's attorney must also "certif[y] in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

Familiar equitable principles govern the Court's decision whether to grant a TRO.[1] Though an "extraordinary remedy," a preliminary injunction, or TRO, is warranted where the plaintiff has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3]that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 24 (2008); *see also Dmarcian Inc. v. Dmarcian Europe BV*, 60 F.4th 119, 138 (4th Cir. 2023). It is an exacting test because, as explained by the Supreme Court, "a preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

"It is well established ... that a federal district court has wide discretion to fashion appropriate injunctive relief in a particular case." *Richmond Tenants Org., Inc. v. Kemp*, 956 F.2d 1300, 1308 (4th Cir. 1992). Indeed, a court should "mold its decree to meet the exigencies of the particular case." *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017)

---

[1] The standard for granting either a TRO or a preliminary injunction is the same. *See e.g.*, *U.S. Dep't of Lab. v. Wolf Run Mining Co.*, 452 F.3d 275, 281 n. 1 (4th Cir. 2006); *McNeill v. Bond*, No. 1:18CV786, 2022 WL 17526565, at *2 (M.D.N.C. Dec. 8, 2022), *report and recommendation adopted*, No. 1:18CV786, 2023 WL 112542 (M.D.N.C. Jan. 5, 2023).

(quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2947 (3d ed. 2013)). In doing so, a court must ensure any injunctive relief is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr, Inc.*, 512 U.S. 753, 765 (1994) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)), and be mindful that "[t]he purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward." *Int'l Refugee Assistance Project*, 137 S. Ct. at 2087 (internal citation omitted).

Plaintiff has satisfied the prerequisites for a TRO, but only for a narrower version of the nationwide injunction he seeks. First, Mr. Green has demonstrated a strong likelihood of success on the merits. Unidentified bootleggers have used, and will likely continue to produce and sell, counterfeit merchandise. Based on the T-shirt picture submitted, these designs strongly resemble the mark, so that consumers would likely confuse the unlicensed merchandise with authorized items. There is nothing to suggest these unidentified bootleggers have any right to sell Mr. Green's merchandise or use his mark. Therefore, Plaintiff has demonstrated a strong likelihood of success on a trademark-infringement claim.

Second, as to Plaintiff's claim of irreparable harm, the Lanham Act provides that "upon a finding of a likelihood of success on the merits," a plaintiff "shall be entitled to a rebuttable presumption of irreparable harm." 15 U.S.C. § 1116(a). No adversary has appeared in this case to rebut the presumption that plaintiffs enjoy under the Lanham Act, which would seem to be borne out here by the likelihood that consumers would be misled by the unauthorized merchandise, despite its allegedly lower quality. This may result in both lost sales (which damages likely couldn't remedy in this circumstance, as alleged by Plaintiff) and reputational harms to Mr.

Green. Accordingly, the Court finds that Plaintiff is likely to suffer irreparable harm absent injunctive relief.

Third, the balance of the equities tips in Mr. Green's favor because an injunction is unlikely to result in substantial, unfair harm to others. Plaintiff or his licensees hold the exclusive right to use his trademark and sell merchandise that uses his trademark. Given that any defendant subject to the seizure and TRO would be an unauthorized infringer, the TRO is unlikely to result in substantial, unfair harm.

Fourth, the injunction would be in the public interest. Enforcement of the Lanham Act's trademark protections serves the public interest in inducing and rewarding the creation of these designs. It further serves the public interest to avoid consumer confusion "about the identity of the enterprise from which goods and services are purchased." *Ledo Pizza Sys., Inc. v. Singh*, 983 F. Supp. 2d 632, 640 (D. Md. 2013) (internal citation omitted).

Although Rule 65 generally requires notice be given to the adverse party, Mr. Green need not do so here. *See* Fed. R. Civ. P. 65(b)(1). Based on the materials presented, the Court finds that Plaintiff has satisfied the traditional requirements for a temporary restraining order and that he may obtain this order *ex parte*. It is impossible to identify potential defendants until they have already begun to infringe upon Mr. Green's trademarks, at which point he will have suffered irreparable injuries. The lost profits at even one venue may be significant. Counsel has stated that it is impossible to identify Defendants in advance and difficult even to ascertain their identities when confronted at the venue. Plaintiff stands to suffer immediate and irreparable injuries if notice is required, and counsel has certified in writing that notice cannot reasonably be given under these circumstances.

7

**NOW THEREFORE IT IS ORDERED THAT:**

1.  Defendants and any person or entity acting in concert with them within the Western District of North Carolina are temporarily restrained from manufacturing, distributing, or selling merchandise that infringes upon Plaintiff's trademarks

2.  The United States Marshals Service and state and local law enforcement officers may seize and impound any infringing merchandise The United States Marshals Service and state and local law enforcement officers may seize and impound any infringing merchandise (i.e. unauthorized goods bearing the full name Rod Wave) that is found for sale

    a.  between 3:00 PM on Wednesday, November 15, 2023 and 3:00 AM on Thursday, November 16, 2023; and
    b.  is within 5 miles of the Spectrum Center in Charlotte, North Carolina.

3.  Plaintiff or his representatives shall hold any seized materials for the Court.

4.  The order is conditioned upon Plaintiff's filing with the Clerk of this Court a bond, certified check, or cash in the amount of $5,000 no later than November 15, 2023 at 12:00 PM, to secure any costs and damages as may be suffered by a wrongfully restrained party.

5.  Plaintiff will advance to law enforcement officers such sum as is required to cover the fees for their services, in the event that Plaintiff seeks their services in this district.

6.  Any Defendant found shall be immediately served and given a receipt if merchandise is seized. Plaintiff shall immediately reveal any identified Defendants to the Court.

7.  Defendants may submit their objections to this Court or apply to modify or dissolve this Order on 2 days notice. See Fed. R. Civ. P. 65(b)(4).

8.  This temporary restraining order shall remain in effect for 14 days unless a further order of the Court dissolves or extends it. *See* Fed. R. Civ. P. 65(b)(2). The Court orders Plaintiff and any Defendants to appear at an in-person hearing in the Charlotte courthouse on November 28, 2023 at 2:00 p.m. Eastern regarding any potential modifications to this order. Plaintiff or his counsel shall attend this hearing and bring representative samples of any seized merchandise, as well as other evidence obtained that would support the full length and scope of the injunction Plaintiff has requested.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: November 14, 2023

Kenneth D. Bell
United States District Judge